IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 06-216 |
| | ) | |
| CLAUDELLE MCMAHILL, | ) | |
| | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion for a new trial pursuant to Federal Rule Criminal

Procedure 33(a) (Docket No. 258), filed by defendant Claudele[1] McMahill ("McMahill" or

"defendant").  McMahill argues that the court erred in not granting a mistrial and that she was

prejudiced due to the invalidity of her co-defendant's waiver of his right to counsel and his

outbursts in court while representing himself.  After reviewing the submissions of the parties, the

court will deny defendant's motion because prejudice was not shown.

I.      **Background**

In June 2006, McMahill was indicted on nine counts of mail fraud.  (Docket No. 1.)  The

first of two superseding indictments was filed in January 2007, charging defendant with nine

counts of mail fraud and also with conspiracy to commit mail fraud between April 2004 and

December 2004.  (Docket No. 74.)  The second superseding indictment was returned on

September 16, 2008, charging defendant with nine counts of mail fraud and one count of

---

[1]Defendant's first name was misspelled as "Claudelle" on the caption of the indictment (Docket
No. 1) and the superceding indictment (Docket No. 74).  The proper spelling, "Claudele," however,
appears on the second superceding indictment (Docket No. 232).

conspiracy to commit mail fraud by fraudulently collecting unemployment compensation from the Pennsylvania Department of Labor & Industry during the time period spanning April 2004 to December 2004.  (Docket No. 232.)  This case was tried before a jury in October 2008.

On October 29, 2008, McMahill was convicted by a jury of nine counts of mail fraud, in violation of 18 U.S.C. § 1341(counts 23 through 31 of the second superseding indictment), and one count of conspiracy, in violation of 18 U.S.C. § 371 (count 32 of the second superseding indictment). (Docket No. 249.)  McMahill timely filed the instant motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(a), alleging that she was substantially prejudiced by the court's decision not to declare a mistrial resulting from the decision of her co-defendant Lacy Tilley ("Tilley") to represent himself.  McMahill argued that during the trial McMahill was unaware of any mental condition afflicting Tilley, Tilley perjured himself regarding his psychiatric care, and  Tilley was not properly determined competent to waive his right to counsel.

## II.      Standard for Deciding a Motion for a New Trial Pursuant to Rule 33

Rule 33 of the Federal Rules of Criminal Procedure provides:

> **Rule 33. New Trial**
>
> **(a) Defendant's Motion.**  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . . .
> **(b) Time to File**.
> **. . .**
> > **(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

FED. R. CRIM. P. 33.  "On a motion for a new trial the defendant is attacking a verdict that is presumptively valid.  For this reason the burden is on defendant to show that a new trial ought to

be granted, although the extent of that burden may vary depending on the ground on which the new trial is being sought."  3 Charles Alan Wright, Nancy J. King & Susan R. Klein, FEDERAL PRACTICE AND PROCEDURE § 551 (3d ed. 2004).  Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial.  Id. at § 556.  "A court may grant a motion for new trial if it finds errors occurred during the trial, and it is reasonably possible such error, or combination of errors, substantially influenced the jury's decision." United States v. Isaac, No. 05-cr-576-1, 2008 WL 3919353, at *9 (E.D. Pa., Aug. 26, 2008) (citing United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994)).  "The reviewing court must decide '"whether the error itself had substantial influence"[on the minds of the jury.]'" Gov't of V.I. v. Bedford, 671 F.2d 758, 762 (3d Cir. 1982) (quoting Gov't of V.I. v. Toto, 529 F.2d 278, 283 (3d Cir. 1976) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946))). "Unless 'there is a reasonable possibility that [the error] contributed to the conviction, reversal is not required.'" Id. (quoting Schneble v. Florida, 405 U.S. 427, 432 (1972)).  "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (citing United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000)).

## III.    Discussion

McMahill argues pursuant to Federal Rule of Criminal Procedure 33(a), that newly discovered evidence shows Tilley's failure to take prescription medication during trial adversely affected his ability to represent himself.  McMahill claims that Tilley perjured himself by denying, while under oath, that he was receiving psychiatric care.  McMahill asserts that Tilley's

self-representation resulted in uncharacteristic outbursts that prejudiced McMahill.  McMahill
claims that Tilley's outbursts were the consequence of Tilley's incompetence to waive his right
to representation.  McMahill contends that Tilley's competency to waive his right to counsel was
not adequately evaluated by this court.

Tilley's Testimony During Trial

A trial court can permit a defendant to waive counsel if a defendant understands
information conveyed to him in a separate colloquy and thereafter makes a knowing and
intelligent decision to represent himself.  Gov't of V.I. v. Charles, 72 F.3d 401, 409 (3d Cir.
1995).  The separate colloquy should provide the defendant with a "specific forewarning of the
risks that foregoing counsel's trained representation entails."  United States v. Peppers, 302 F.3d
120, 133 (3d Cir. 2002).  The court must inform the defendant that he will need to comply with
the Federal Rules of Evidence and Criminal Procedure.  United States v. Jones, 452 F.3d 223,
229 (3d Cir. 2006).  A "'perfunctory questioning'" of defendant's understanding of his rights is
not sufficient.  Id. at 228 (quoting United States v. Welty, 674 F.2d 185, 187 (3d Cir. 1982)).
Instead, a court must engage in a "penetrating and comprehensive" inquiry until it satisfies itself
that the defendant has made a knowing, understanding, and voluntary waiver of counsel.
Peppers, 302 F.3d at 131.

This court engaged in an appropriate colloquy with Tilley during the trial after he
requested that he conduct his own trial defense.  (Trial Tr., Docket No. 299, 128-48, Oct. 16,
2008.)  Among other things, the court asked:

> The Court:     Mr. Tilley, have you had any alcoholic beverages or any
> medications within the last 24 hours?

4

| Tilley: | No, ma'am. |
| The Court: | Have you been under psychiatric or medical care? |
| Tilley: | No, Your Honor. |

(Id. at 130.)

After a thorough explanation of his rights and obtaining confirmation of his understanding, this court warned Tilley that he was making an unwise decision.  (Id. at 147-48.) Tilley rejected the advisory warning and the court found he knowingly and voluntarily waived his right to counsel.  (Id. at 147, 149.)  The court based its determination upon many factors, including: Tilley's understanding of his right to be represented by counsel, (Id. at 130); Tilley's understanding of the elements of the offenses of his crimes, (Id. at 131-34); Tilley's understanding of the penalties for the alleged crimes, (Id. at 135-38); Tilley's understanding of the hazards presented by his lack of a formal legal education, (Id. at 140); Tilley's partially successful self-representation in a previous criminal action, (Id. at 140-41); Tilley's testimony that he understood the Federal Sentencing Guidelines, (Id. at 141-44); and Tilley's testimony that he was familiar with the Federal Rules of Evidence and Federal Rules of Criminal Procedure. (Id. at 145-46.)

McMahill recognizes that Tilley had the right to waive counsel so long as the right was knowingly and intelligently waived.  Faretta v. California, 422 U.S. 806, 835 (1975).  McMahill contends that it is impossible to tell whether Tilley's varying consumptions of psychotropic medications, Zoloft and Sinequan, affected his ability to waive knowingly and intelligently the right to counsel.

5

Post Trial Hearing on Tilley's Competency to Represent Himself during Trial

After being found guilty, Tilley filed a motion for a new trial (Docket No. 254) asserting that he had not been competent to represent himself due to his need to take medications for his mental health condition and that he was not truthful during the colloquy relating to his request to represent himself.

On July 16, 2009, the court held a hearing to consider whether Tilley was not competent to waive his right to represent himself based upon his allegations that he stopped taking his prescription drugs.  Robert M. Wettstein, M.D. ("Dr. Wettstein"), an independent psychiatric expert, was appointed by the court, among other things, to evaluate retrospectively Tilley's competence at the time of trial.  Dr. Wettstein's appointment was prompted by Tilley's allegations after trial that he was not competent to waive his right to counsel at trial.  Tilley told Dr. Wettstein "that he deliberately stopped taking the medicine on [October 16, 2008, the date of the colloquy concerning Tilley's request to represent himself], and in the previous two days, so that he could represent to the Court that he was not taking medicine."  (Tr. of Competency Hr'g for Tilley 7, July 16, 2009.)

Dr. Wettstein, a psychiatrist, testified consistent with a report he prepared, which was utilized by counsel during the questioning of Dr. Wettstein, that Tilley's discontinuation of his medication, i.e., Zoloft and Sinequan, would not have impaired his cognitive ability.  (Tr. Of Competency Hr'g for Tilley 13, July 16, 2009; Op. Dr. Wettstein, June 6, 2009.)  Dr. Wettstein testified:

> Prosecutor:      [I]t was your opinion that [Tilley] was competent at the time of the trial to represent himself and stand trial?

> Dr. Wettstein:    Yes.
>
> Prosecutor:       And that's even if you, even if you assume that Mr. Tilley told you the truth about not taking his medication?
>
> Dr. Wettstein:    Yes.  Even assuming that there were some periods of time when he did not have his medication.

(Tr. of Competency Hr'g for Tilley 13, July 16, 2009.)  During the competency hearing the court inquired of Dr. Wettstein:

> The Court:        [W]hat would be your opinion about whether he had a mental disease or defect that would render him unable to make a decision concerning whether he should represent himself or not?
>
> Dr. Wettstein:    That he did not have such a condition at the time, even though there was some underlying depression and anxiety, but those two were not present to an incapacitating degree.
>
> The Court:        To make that type of decision.
>
> Dr. Wettstein:    Correct.

(Tr. of Competency Hr'g for Tilley 55.)

No conflicting expert opinions were proffered on the date of the competency hearing with respect to Tilley's mental competence.  The court continued the hearing to afford Tilley an opportunity to have another psychiatrist evaluate him.  (Tr. of Competency Hr'g for Tilley 55, July 16, 2009.)  Rather than continuing the competency hearing, Tilley on July 22, 2009, withdrew his motion for a new trial and changed his plea to guilty with respect to charges in two other indictments.  (Tr. Change of Plea Hr'g 23, 46, July 22, 2009.)

During the change of plea hearing, the court inquired about Tilley's use of medication and treatment by a psychiatrist:

The Court:     Mr. Tilley, have you taken any drugs or medication, or had any alcoholic beverages to drink in the past 24 hours?

Tilley:        None at all, Your Honor.

The Court:     No medication, no prescribed medication?

Tilley:        No, Your Honor, none.

The Court:     Okay.  With the last 24 hours, you're not on an your psychiatric medicines?

Tilley:        Nothing, and for a while now.

The Court:     Okay.  And are you currently under the influence of a drug, medication, or alcoholic beverage of any kind?

Tilley:        No, Your Honor.

The Court:     Are you now or have you recently been under the care of a physician or a psychiatrist?

Tilley:        Not since the last time I reported it to the Court that I wasn't.  I haven't been since.

The Court:     Okay.  You were under the treatment of a psychiatrist at one point, though, because at least during the prior trial, you were taking some prescribed medications.

Tilley:        Yes, Your Honor, I was.

The Court:     Okay.  And did you voluntarily take yourself off those medications now, or is that with your psychiatrist's advice?

Tilley:        I took myself off of them.

The Court:     Okay.

Tilley:        With his knowledge.

The Court:     With his knowledge.

Tilley:        Yes, Your Honor.

8

(Tr. Change of Plea Hr'g 4-5,  July 22, 2009.)  Based upon Dr. Wettstein's assessment and the

colloquy, the court found Tilley competent to plead.  (Tr. Change of Plea Hr'g 7, July 22, 2009.)

      With respect to the psychiatrist Tilley had retained to evaluate his competency, the court

was advised by Tilley's counsel that the psychiatrist "hasn't found anything inconsistent with Dr.

Wettstein's report."  (Tr. Change of Plea Hr'g 24, July 22, 2009).  The court made the following

findings after receiving that information about the psychiatrist retained by Tilley.

| | |
|---|---|
| The Court: | So, at this time I feel an obligation, because competency is a significant issue, and if what the Court has before it is Dr. Wettstein's report, and that is uncontradicted, as well as Dr. Wettstein's testimony, and the Court's own observance of Mr. Tilley during the prior trial, I would find that he was competent to represent himself, and he waived his right to counsel during the trial at 06-216. |
| Defendant's Counsel: | That's our position, too. |

(Id.)

      McMahill argues that Dr. Wettstein failed to distinguish and apply the legal standard set

forth by the United States Supreme Court in Indiana v. Edwards, 128 S. Ct. 2379 (2008).

McMahill claims that Dr. Wettstein determined that Tilley would be capable of summoning

necessary and technical legal knowledge in his own defense, but did not determine whether

Tilley was competent to waive his right to representation.

      In Edwards, the Supreme Court held that "the Constitution permits States to insist upon

representation by counsel for those competent enough to stand trial . . . but who still suffer from

severe mental illness to the point where they are not competent to conduct trial proceedings by

themselves."  Id. at 2388.  The Supreme Court noted that, while Edwards incorporated the

elements of <u>Faretta v. California</u>, 422 U.S. 806 (1975), and <u>Godinez v. Moran</u>, 509 U.S. 389

(1983), which focused on the ability to invoke the right to waive counsel, neither <u>Faretta</u> nor

<u>Godinez</u> answered the question before the Court in <u>Edwards</u>; rather, the analysis in <u>Edwards</u>

turned on whether it is constitutionally fair to allow a mentally incompetent person to conduct a

defense without the assistance of counsel.  <u>Id.</u> at 2388.  The Supreme Court in <u>Edwards</u>

instructed that:

> the trial judge, particularly one such as the trial judge in this case,
> who presided over one of Edwards' competency hearings and his
> two trials, will often prove best able to make more fine-tuned
> mental capacity decisions, tailored to the individual circumstances
> of a particular defendant.

<u>Id.</u> at 2387.

Dr. Wettstein's reasoning and conclusions stated in his report and testimony are

consistent with the Supreme Court's rationale in <u>Edwards</u>.  In <u>Edwards</u>, the Supreme Court

concluded that a heightened standard was needed in cases where a person did not possess the

mental wherewithal to self-representation, yet was competent to stand trial.  Dr. Wettstein opined

that Tilley was competent to stand trial and that he did not have a mental illness or impairment

severe enough to prevent him from representing himself.  (Tr. of Competency Hr'g for Tilley 6,

July 16, 2009; Op. Dr. Wettstein 14.)

McMahill contends that Tilley perjured himself when asked by the court about his

psychiatric care and medication use, effectively barring an inquiry into his condition and the

effects of the medication.  Dr. Wettstein, however, conducted a thorough retrospective evaluation

inquiring into these issues and opined that Tilley's psychiatric condition at the time was not

severe enough to prevent him from representing himself, and that his withdrawal from Zoloft and

Sinequan had no cognitive effect on his ability to represent himself.  The court accepted Dr.

Wettstein's opinion and relied on its independent recollection of Tilley's conduct during trial in

making the determination that Tilley was competent to waive his right to counsel, to represent

himself and to stand trial.

<u>Prejudice</u>

Prejudice must be established in order for this court to grant a new trial pursuant to

Federal Rule of Criminal Procedure 33(a).  McMahill's claim of prejudice springs from her

assertion that Tilley was incompetent to represent himself.  Because this court found that Tilley

was competent, McMahill's argument with respect to Tilley's competence is moot.  McMahill

cited several instances in Tilley's closing remarks where he allegedly prejudiced McMahill.  The

jury, however, was instructed to consider separately the charges against Tilley and McMahill.  In

the final charge, the court provided the jury with the following instructions:

> <u>Separate Consideration – Multiple Defendants Charged with
> Different Offenses</u>.
>
> The defendants Claudelle McMahill and Lacy Tilley are
> charged with the same offenses in Counts 23 through 32, and Lacy
> Tilley is charged with different offenses in Counts 1 through 22.  I
> want to emphasize several things.
>
> The number of offenses charged is not evidence of guilt,
> and this should not influence your decision in any way.  Also, in
> our system of justice, guilt or innocence is personal and individual.
> You must separately consider the evidence against each defendant
> on each offense charged, and you must return a separate verdict for
> each defendant for each offense.  For each defendant and each
> offense, you must decide whether the government has proved
> beyond a reasonable doubt that a particular defendant is guilty of a
> particular offense.
>
> Your decision on any one defendant or any one offense,

11

whether guilty or not guilty, should not influence your decision on
any other defendant or offenses.  Each defendant and each offense
should be separately considered.

I'll repeat that.  Each defendant and each offense should be
separately considered.

(Trial Tr., Docket No. 304, 127, Oct. 27, 2008.)

In the preliminary charge this court instructed that the opening and closing arguments

were not evidence and "[o]nly the evidence which has been admitted during the trial can be

considered by you in determining the facts."  (Trial Tr., Docket No 296, 11, Oct. 8, 2008.)  In the

final charge, this court instructed the jury not to consider any of the remarks made in closings as

evidence.  (Trial Tr., Doc. 304, 125, July 16, 2009 ("If any argument, statement, remark or

question of the attorney or Lacy Tilley, who was representing himself, has no basis in the

evidence, then you should disregard that particular argument, statement, remark or question.").)

When reading the verdict form during the final charge, the court instructed:

Now, page 9 [of the verdict form] is the first time we see the
charges against Claudelle McMahill.  Remember, each defendant has to be
considered separately. So, you have got to separate, compartmentalize the
evidence you heard, and treat the defendants separately.

I've already given an instruction on it.  Each count is considered
separately, and each defendant as to each count has to be viewed and
considered separately.  But, you know, follow the instructions that I have
given you already.

(Trial Tr., Docket No. 348, 145, Oct. 28, 2008.)

A jury is presumed to follow the instructions given by the court.  United States v. Malfi,

264 F.2d 147, 151 (3d Cir. 1959) (quoting United States v. Gordon, 242 F.2d 122, 126 (3d Cir.

1957)("'We must assume that the jury was one of average intelligence, and after sitting through

12

five days of trial, knew very well what was meant by the simple statutory words used to describe the offense * * * and the instructions neither confused nor misled them.'")); see also United States v. Detelich, No. 08-2285, 2009 WL 3651263, at *5 (3d Cir. 2009) ("We presume that juries understand and carefully follow instructions.").  The court presumes the jury followed the instructions and cannot conclude that any prejudice attached.

## III.    Conclusion

Because McMahill failed to establish prejudice, the motion for a new trial is DENIED.

By the Court:

Dated: December 22, 2009                    /s/ JOY FLOWERS CONTI
                                            Joy Flowers Conti
                                            United States District Judge